1
2
3
4
5
6           UNITED STATES DISTRICT COURT

7           SOUTHERN DISTRICT OF CALIFORNIA

8

9  RONALD W. SINGSON,                    )   Case No. 10CV2362-WQH (BLM)
                                          )
10                     Plaintiff,         )   **REPORT AND RECOMMENDATION**
                                          )   **FOR ORDER GRANTING**
11 v.                                     )   **DEFENDANTS' MOTION TO**
                                          )   **DISMISS PORTIONS OF**
12 E. MARRERO, et al.,                    )   **PLAINTIFF'S FIRST AMENDED**
                                          )   **COMPLAINT**
                       Defendants.        )
13                                        )
                                          )
14 _____       )   **[ECF No. 34]**

15

16

17        This Report and Recommendation is submitted to United States District Judge William Q.

18 Hayes pursuant to 28 U.S.C. § 636(b) and Local Civil Rules 72.1(c) and 72.3(f) of the United

19 States District Court for the Southern District of California.

20        On November 15, 2010, Plaintiff, Ronald W. Singson, a state prisoner proceeding *pro se*,

21 filed this civil rights suit against Defendants Scott Kernan, George Neotti, D.R. Morris, E. Marrero,

22 Brandt, W. Norman, Ivy Choo, Arnold Schwarzenegger, W. Suglich, L. Romero, J. Clark Kelso,

23 and Seeley.  ECF No. 1.  Plaintiff's complaint was dismissed by the Court with leave to amend

24 on January 12, 2011 for failure to state a claim pursuant to 28 U.S.C. § 1915A.  ECF No. 4.  On

25 March 3, 2011, Plaintiff filed a First Amended Complaint [ECF No. 6 ("FAC")] against the same

26 Defendants and on April 11, 2011, the Court dismissed every Defendant but E. Marrero and W.

27 Suglich ("Defendants").  ECF No. 7.  Plaintiff filed a motion to amend the FAC on December 14,

28 2011.  Defendants filed a motion to dismiss on August 1, 2012.  [ECF No. 29] and, in an order

1  dated August 6, 2012, the Court granted Plaintiff's motion to amend and denied Defendants'
2  motion to dismiss without prejudice and with leave to refile pending Plaintiff's response to the
3  order.  ECF No. 32.  On November 14, 2012, the Court issued an order noting that Plaintiff failed
4  to file a second amended complaint and deeming the FAC to be the operative pleading in this
5  matter.  ECF No. 33.  Defendants filed a motion to dismiss Plaintiff's FAC on November 26, 2012
6  [ECF No. 34-1 ("MTD")] and Plaintiff opposed the motion on January 8, 2013 [ECF No. 37
7  ("Oppo.")].  Defendants filed a reply on January 15, 2013.  ECF No. 38 ("Reply").  Plaintiff filed
8  a request for judicial notice on January 25, 2013.  ECF No. 39.

9      This Court finds the issue appropriate for decision on the papers and without oral
10  argument pursuant to Local Civil Rule 7.1 (d)(1).  ECF No. 35.  The Court has considered
11  Plaintiff's First Amended Complaint, Defendants' Motion to Dismiss, Plaintiff's Opposition,
12  Defendants' Reply, Plaintiff's Request for Judicial Notice, and all supporting documents submitted
13  by the parties.  For the reasons set forth below, this Court **RECOMMENDS** that Defendants'
14  Motion to Dismiss ("MTD") Plaintiff's deliberate indifference to medical care claim and request
15  for injunctive relief be **GRANTED** and that Plaintiff's Eighth Amendment claim for cruel and
16  unusual punishment continue.

17                    **BACKGROUND**

18      Because this case comes before the Court on a motion to dismiss, the Court must accept
19  as true all material allegations in the complaint, and must construe the complaint and all
20  reasonable inferences drawn therefrom in the light most favorable to Plaintiff.  See Thompson
21  v. Davis, 295 F.3d 890, 895 (9th Cir. 2002).  According to the complaint, Plaintiff was housed in
22  lower tier cell housing in unit 12 until May 7, 2009, when Defendant Marrero moved Plaintiff to
23  an upper tier cell in unit 13.  FAC at 3.  Plaintiff objected to being moved but was told by
24  Defendant Marrero that he would be placed in AD-SEG "if [he] continued to disobey a direct
25  order and would likely be placed on the top tier in AD-SEG."  Id.  Plaintiff was moved to the top
26  tier where he struggled with his "mobility and visual impairments while navigating the stairs
27  daily."  Id.

28      On May 25, 2009, after the evening meal release, Plaintiff fell on the stairs and injured

himself. Id.  Despite the fact that Correctional Officer M. Rosales called an emergency transport vehicle, Plaintiff was not permitted to go to the hospital.  Id.  When he attempted to walk to the TTA (the prison emergency room, see MTD at 3.), after being ordered to do so, Plaintiff was stopped by Officer W. Norman.  Id.  Plaintiff was not seen by a doctor until the following day. Id.  After seeing the doctor, Plaintiff was issued another lower tier order which was communicated to the prison staff.  Id.  Despite this, Plaintiff was forced to remain in the upper tier. Plaintiff reached out to Defendant Suglich for assistance in getting moved to the lower tier, but Defendant Suglich "refused to honor the doctors [sic] orders and also threatened to place [Plaintiff] in AD-SEG if [he] refused to remain on the upper tier."  Id.  Plaintiff was prescribed morphine as a result of his fall and anticipates that he "will likely suffer from [his] injuries for the rest of [his] life."  Id.

On June 23, 2009, Plaintiff again fell on the stairs in housing unit 13 "and severely injured [himself]."  Id. at 4.  Plaintiff alleges that he was denied immediate medical treatment "to keep captain W. Suglich from causing a major disturbance."  Id.  Plaintiff again was prevented from going to the TTA, but he was seen by Registered Nurse Mallory in the facility clinic.  Id.  That evening Plaintiff was returned to his cell and moved to the lower tier.  Id.  On July 2, 2009, Plaintiff went to the TTA where he had his left wrist x-rayed and received Tylenol to alleviate his pain.  Id.  On January 25, 2011, Plaintiff underwent surgery on his right shoulder "to attempt to repair the damage [he] suffered falling on the stairs."  Id.  Since Plaintiff's first fall in May 2009, he has been on Morphine, Neurotin, Elavil and Ibuprofen to manage his pain and he "will likely remain on some type of pain management regiment for the remainder of [his] life."  Id.

Plaintiff alleges that Defendants "acted under color of the law, committing the neglectful and malicious actions towards [Plaintiff] depriving [him] of his right to be free from cruel and unusual punishment."  Id.  Plaintiff seeks damages in the amount of $1,000,000.00, punitive damages in the amount of $100,000.00 per Defendant, money for "any and all related medical care," and injunctive relief preventing "retaliation, reprisals, and harassment from all staff, officers, and administrative persons employed at R.J. Donovan Correctional Facility, such as: verbal harassment; retaliatory transfer; placement in administrative segregation on bogus

1    charges or investigations retaliatory cell searches; confiscation of personal property; tampering

2    of mail." <u>Id.</u> at 6.

3                                      **DISCUSSION**

4        Defendants argue that portions of Plaintiff's FAC should be dismissed because Plaintiff

5    failed to state a claim upon which relief can be granted. MTD at 1. Specifically, Defendants

6    explain that Plaintiff's deliberate indifference to medical care claim should be dismissed because

7    Plaintiff "does not allege Defendants personally participated in the alleged deprivation." <u>Id.</u> at

8    2. Defendants also "seek to dismiss Plaintiff's request for injunctive relief because he seeks to

9    enjoin tangential, speculative conduct by everyone at R.J. Donovan Correctional Facility." <u>Id.</u>

10    Plaintiff disputes Defendants' arguments and claims he has cured all of the defects in his original

11    complaint and that since his complaint was screened by the Court, he has made a prima facie

12    case that should survive the motion to dismiss. Oppo. at 1. Additionally, Plaintiff states that the

13    injunctive relief is necessary because his "mail and correspondence with this court are regularly

14    interrupted and the destruction of his Second Amended Complaint demonstrates that they will

15    stop at nothing to frustrate [Plaintiff's] attempt to prosecute this action." <u>Id.</u> at 1-3.

16 **A.    LEGAL STANDARD**

17        Defendants move to dismiss Plaintiff's deliberate indifference to medical care claim and

18    request for injunctive relief under Federal Rule 12(b)(6) for failure to state a claim upon which

19    relief can be granted. MTD at 6. Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure,

20    a complaint must contain "a short and plain statement of the claim showing that the pleader is

21    entitled to relief ..." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does

22    not require 'detailed factual allegations,' but it demands more than an unadorned,

23    the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)

24    (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).

25        A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims.

26    Fed. R. Civ. P. 12(b)(6). The issue is not whether the plaintiff ultimately will prevail, but whether

27    he has properly stated a claim upon which relief could be granted. <u>Jackson v. Carey</u>, 353 F.3d

28    750, 755 (9th Cir. 2003). In order to survive a motion to dismiss, a Plaintiff must set forth

"sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 556 U.S. at 663 (quoting Twombly, 550 U.S. at 570).  If the facts alleged in the complaint are "merely consistent with" the defendant's liability, the plaintiff has not satisfied the plausibility standard.  Id. at 678 (quoting Twombly, 550 U.S. at 557).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Twombly, 550 U.S. at 556).

When a plaintiff appears *pro se*, the court must be careful to construe the pleadings liberally and to afford the plaintiff any benefit of the doubt.  See Erickson, 551 U.S. at 94 (2007); Thompson, 295 F.3d at 895.  This rule of liberal construction is "particularly important" in civil rights cases.  Hendon v. Ramsey, 528 F. Supp. 2d 1058, 1063 (S.D. Cal. Dec. 28, 2007) (citing Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992)); see also Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (stating that because "Iqbal incorporated the Twombly pleading standard and Twombly did not alter the Court's treatment of pro se filings; accordingly we continue to construe *pro se* filings liberally."  This is particularly important where the Petitioner is a *pro se* prisoner litigant in a civil rights matter).  When giving liberal construction to a *pro se* civil rights complaint, however, the court is not permitted to "supply essential elements of the claim that were not initially pled."  Easter v. CDC, 694 F. Supp.2d 1177, 1183 (S.D. Cal. March 9, 2010) (quoting Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982)).  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss."  Id.  (quoting Ivey, 673 F.2d at 268).

The court should allow a *pro se* plaintiff leave to amend his or her complaint "unless the pleading could not possibly be cured by the allegation of other facts."  Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003) (internal citations omitted).  Moreover, "before dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively."  Wayne v. Leal, 2009 WL 2406299, *3 (S.D. Cal. Aug. 4, 2009) (quoting Ferdik, 963 F.2d at 1261).

///

**B.      EIGHTH AMENDMENT - DELIBERATE INDIFFERENCE**

Plaintiff's complaint lists two counts (one against each Defendant) of cruel and unusual punishment in violation of the Eighth Amendment stemming from his claim that despite being aware that Plantiff needed to be housed in a lower tier cell due to his medical conditions, Defendants moved him to an upper tier cell, resulting in multiple falls by Plaintiff that caused serious injury.  FAC at 3-4.  In addition to the cruel and unusual punishment claims, the sufficiency of which Defendants do not challenge[1], Defendants read Plaintiff's complaint as containing an additional claim against each defendant for deliberate indifference to the medical care Plaintiff received after each fall.  MTD at 7.  Defendants base this additional claim on the portions of Plaintiff's complaint which state that (1) Defendants "set[] in motion 'a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury," (2) Plaintiff's treatment was delayed "in an attempt to keep [C]aptain W. Suglich from causing a major disturbance," and (3) Plaintiff suffered a "lengthy and painful" one-and-a-half year wait for shoulder surgery.  Id.

Even with liberal construal, the Court does not read the complaint as alleging a claim for deliberate indifference to medical care based upon the care Plaintiff received after his falls.  The Court notes that Plaintiff did clearly raise this claim in his original complaint where he described his claims as "[d]enial of medical care and the right to be free from cruel and unusual punishment" and named various nurses and doctors as defendants.  In contrast, in the FAC, Plaintiff describes his claims as "freedom from cruel and unusual punishment" and does not explicitly state or even imply that he was denied adequate medical care by either Defendant Marrero or Defendant Suglich, the only two defendants left in the case.  ECF No. 1 at 5-10 and FAC at 3-4.  However, to the extent Defendants are correct and Plaintiff is making a claim of deliberate indifference to the medical care provided after his falls,[2] Plaintiff fails to sufficiently

---

[1]Defendants refer to this claim as an alleged violation of Plaintiff's Eighth Amendment right to humane conditions of confinement.  MTD at 7.

[2]To clarify, the Court finds that Defendants have not challenged the sufficiency of Plaintiff's allegation that his Eighth Amendment rights were violated by Defendants' individual failures to provide Plaintiff with a lower tier assignment.  This claim, whether it is called a condition of confinement, deliberate indifference, or cruel and unusual

plead the claim for the reasons discussed below.

A prison official's "deliberate indifference to a prisoner's serious illness or injury" violates the Eighth Amendment's proscription against cruel and unusual punishment. <u>See Clement</u>, 298 F.3d at 904. There is both an objective and a subjective component to an Eighth Amendment violation. <u>Id.</u> The objective component generally is satisfied so long as the prisoner alleges facts to show that his medical need is sufficiently "serious" such that the "failure to treat [the] condition could result in further significant injury or the unnecessary and wanton infliction of pain." <u>Id.</u>; <u>Lopez v. Smith</u>, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The subjective component requires the prisoner to allege facts showing a culpable mental state, specifically, "deliberate indifference to a substantial risk of serious harm." <u>Farmer v. Brennan</u>, 511 U.S. 825, 836 (1994). "Deliberate indifference" is evidenced only when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> at 837. The indifference must be substantial, and inadequate treatment due to malpractice, or even gross negligence, does not rise to the level of a constitutional violation. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). Indifference "may appear when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." <u>Tracey v. Sacramento County Sheriff</u>, 2008 WL 154607, *2 (E.D. Cal. Jan. 15, 2008) (quoting <u>Hutchinson v. United States</u>, 838 F.2d 390, 392 (9th Cir. 1988)).

"Mere delay of medical treatment, without more, is insufficient to state a claim of deliberate medical indifference." <u>Robinson v. Catlett</u>, 725 F. Supp.2d 1203, 1208 (S.D. Cal. July 19, 2012) (quoting <u>Shapley v. Nevada Bd. of State Prison Comm'rs</u>, 766 F.2d 404, 407 (9th Cir. 1985)). To state a claim for deliberate indifference arising from a delay in treatment, a prisoner must allege that the delay was harmful, although an allegation of substantial harm is not

---

punishment, is not being challenged at this time and will proceed forward. The rest of this Report and Recommendation addresses only the potential allegation that Plaintiff is alleging that Defendants Marrero and Suglich unconstitutionally interfered with the medical care Plaintiff received after his falls.

10CV2362-WQH (BLM)

required.  McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1991), overruled on other grounds by, WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997).  Factual allegations indicating that the official "sat idly by as [the prisoner] was seriously injured despite the defendant's ability to prevent the injury" or that the official "repeatedly failed to treat an inmate properly ... strongly suggests that the defendant's actions were motivated by 'deliberate indifference' to the prisoner's medical needs."  Id. at 1060-61.  "In sum, the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established "deliberate indifference" on the part of the defendant."  Id. at 1061.   Isolated incidents relative to a plaintiff's overall treatment suggest no deliberate indifference.  Id. at 1060.

### 1.   Objective Requirement

Plaintiff satisfies the objective prong of the test for an Eighth Amendment violation.  A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."  Nawabi v. Wyatt, 2009 WL 3514849, *7 (C.D. Cal., Oct. 26, 2009) (citing Estelle, 429 U.S. 97 at 104).  In considering the seriousness of an alleged medical need, courts should consider whether (1) a reasonable doctor would think that the condition is worthy of comment or treatment; (2) the condition significantly affects the prisoner's daily activities; and (3) the condition is chronic and accompanied by substantial pain.  Id. (citing Doty v. County of Lassen, 37 F.3d 540 at 546 n. 3) (9th Cir. 1994).

Here, the Court must accept as true that Plaintiff fell down the stairs on two separate occasions and suffered serious injuries that will require him to remain on a pain management regiment of Morphine, Ibuprofen, Neurotin, and Elavil for the remainder of his life.  FAC at 3-4.  In addition, as a result of the falls, Plaintiff had to endure intense pain for over a year until surgery was performed on his right shoulder.  Id.  A reasonable doctor is likely to think that pain sustained after falling down a set of stairs and that results in the need for shoulder surgery is worthy of comment or treatment.  Plaintiff does not allege that his daily activities were affected by the falls, but he does allege that the injuries have resulted in chronic and substantial pain.

1   <u>Id.</u>  Under these facts, Plaintiff states a plausible allegation of a "serious illness or injury."[3]

2   <u>Brown v. Cassim</u>, 2008 WL 1990864, *9 (C.D. Cal. March 25, 2008) (finding that plaintiff

3   adequately alleged the existence of a "serious medical need" where plaintiff had an order for a

4   lower tier bunk and was an insulin dependant diabetic who suffered from deteriorating vision,

5   degenerative disc disease and was under the influence of psychotropic medication and fell down

6   the stairs after being assigned to an upper bunk.  And, where because of the fall, plaintiff

7   suffered injuries to his lower back, hip, shoulder, left arm and a broken thumb); <u>see</u> <u>also</u> <u>West</u>

8   <u>v. Pettigrew</u>, 2013 WL 85380, * 2 (E.D. Cal. Jan. 8, 2013) (stating "Plaintiff's allegations that a

9   medical doctor issued a chrono for plaintiff to be housed in a lower bunk due to a back condition,

10  and that he was instead housed on an upper bunk, are sufficient to meet the first prong of his

11  Eighth Amendment claim").

12         2.   <u>Subjective Requirement</u>

13            a.   Defendant Marrero

14       Plaintiff has failed to demonstrate that Defendant Marrero was deliberately indifferent to

15  a substantial risk of serious harm to Plaintiff resulting from his medical care after his falls.  While

16  Plaintiff alleges that he was not permitted to go to the hospital after falling on the stairs in May

17  2009, and that he was not seen by a doctor until the following day, he does not allege that it was

18  Defendant Marrero who prevented him from going to the hospital or that Defendant Marrero was

19  in any way involved in that decision.  FAC at 3.  Along those same lines, Plaintiff alleges that he

20  was stopped from visiting the TTA by Officer Norman, but does not allege that Defendant

21  Merrero had anything to do with this alleged denial of medical care.  <u>Id.</u>  In fact, Plaintiff does

22  not allege that Defendant Marrero had any involvement in his medical care.[4]  <u>Id.</u> at 3-4.  Even

23  viewed in the light most favorable to Plaintiff, these allegations do not establish that Defendant

24  Marrero was aware of and disregarded an excessive risk to Plaintiff's safety with regard to

25

26        [3]Defendants do not dispute that plaintiff's injuries constitute a serious medical need. MTD & Reply.

27

28        [4]In contrast, Plaintiff does allege that Defendant Marrero was responsible for the decision not to permit Plaintiff to reside on a lower tier.  FAC at 3.

1  Plaintiff's medical care or that Defendant Marrero interfered with or delayed Plaintiff's medical

2  care in any way.   The Court therefore **RECOMMENDS** that Defendants' motion to dismiss

3  Plaintiff's claim of deliberate indifference to medical care against Defendant Marrero be

4  **GRANTED WITHOUT LEAVE TO AMEND**.[5]

5            b.    Defendant Suglich

6            Plaintiff also has failed to demonstrate that Defendant Suglich was deliberately indifferent

7  to a substantial risk of serious harm to Plaintiff with regard to Plaintiff's medical care.  Again,

8  Plaintiff does allege that Defendant Suglich refused to honor the doctors' orders and threatened

9  to place him in the AD-SEG unit "if [he] refused to remain on the upper tier in housing unit 13,"

10 but does not allege that Defedant Suglich interfered in any way with the quality of Plaintiff's

11 medical care.  Id. at 3.  With regard to his medical care, Plaintiff alleges that he suffered another

12 fall on June 23, 2009 "after seeking relief [of a lower tier assignment] from [C]aptain W. Suglich"

13  and that he was "denied immediate medical treatment in an attempt to keep [Defendant] W.

14 Suglich from causing a major disturbance."  Id. at 4.  However, Plaintiff does not provide any

15 support or explanation for this second statement.  Id.  As a result, it is unclear whether Plaintiff

16 is alleging that Defendant Suglich denied the medical treatment or that another person made the

17 decision, allegedly in order to avoid a disturbance from Defendant Suglich.  As with his first fall,

18 Plaintiff again alleges that he was not permitted to visit the TTA after his June fall, but he does

19 not allege that Defendant Suglich prohibited the visit or was involved in the denial decision in any

20 way.  Id.  Similarly, Plaintiff alleges that he was forced to endure an approximately year-and-a-

21 half long "lengthy and painful wait" to receive surgery on his right shoulder in January 2011.  Id.

22 However, Plaintiff does not allege that Defendant Suglich played any part in determining when

23 his surgery took place.  Id.

24           Plaintiff's allegations do not demonstrate that Defendant Suglich was aware of and

25

26           [5]The Court recommends that the dismissal be without leave to amend because the Court does not believe
27  that Plaintiff is alleging in the FAC that the Defendants are responsible for any failures in Plaintiff's medical care after
    the falls.  To the extent Plaintiff is making such an allegation, dismissal with prejudice is appropriate because this is
    Plaintiff's second attempt to allege the violation and there do not appear to be any facts that would support this claim.
28  See Ramirez, 334 F.3d at 861; Wayne, 2009 WL 2406299, *3.

1   disregarded an excessive risk to Plaintiff's safety with regard to his medical care after the falls

2   or interfered in any with Plaintiff's medical care after the falls.  The Court therefore **RECOM-**

3   **MENDS** that Defendants' motion to dismiss Plaintiff's claim of deliberate indifference to medical

4   care against Defendant Suglich be **GRANTED WITHOUT LEAVE TO AMEND**.[6]

5   **C.    INJUNCTIVE RELIEF**

6          Plaintiff is seeking injunctive relief to prevent "retaliation, reprisals, and harassment from

7   all staff, officers, and administrative persons employed at R.J. Donovan Correctional Facility, such

8   as: verbal harassment; retaliatory transfer; placement in administrative segregation on bogus

9   charges or investigations retaliatory cell searches; confiscation of personal property; tampering

10  of mail."  FAC at 6.  Defendants respond that Plaintiff's request for injunctive relief should be

11  dismissed "because he seeks to enjoin tangential, speculative conduct by everyone at R.J.

12  Donovan Correctional Facility."  MTD at 2.

13         The Eleventh Amendment does permit "suits for prospective injunctive relief against state

14  officials acting in violation of federal law."  Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437

15  (2004).  However, injunctive relief is available if there is a "real or immediate threat that the

16  plaintiff will be wronged again."  City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983).

17  Accordingly, injunctive relief is appropriate only when "irreparable injury" is threatened. Id.  To

18  establish irreparable injury, a plaintiff must demonstrate a "real or immediate threat that the[y]

19  will be wronged again-a 'likelihood of substantial and immediate irreparable injury." Id.  "A state

20  law enforcement agency may be enjoined from committing constitutional violations where there

21  is proof that officers within the agency have engaged in a persistent pattern of misconduct."

22  Gomez v. Vernon, 255 F.3d 1118, 1129 (9th Cir. 2001) (quoting Thomas v. County of Los

23  Angeles, 978 F.2d 504, 508 (9th Cir. 1992)); and Walters v. Reno, 145 F.3d 1032, 1048 (9th Cir.

24  1998) ("Injunctive relief is appropriate in cases involving challenges to government policies

25  resulting in a pattern of constitutional violations").

26         The standard for injunctive relief must be considered in conjunction with the Prison

27  ───────────────────

28         [6]The Court recommends dismissal without leave to amend for the same reasons as the Defendant Marrero recommendation.  See fn 5.

Litigation Reform Act ("PLRA").  Under the PLRA, the court must find that the prospective relief is "narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right," before granting injunctive relief.  18 U.S.C. § 3626(a)(1);  see also Gomez, 255 F.3d at 1128-9.  Additionally, the court must give "substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief."  Id. at 1129 (citing Oluwa v. Gomez, 133 F.3d 1237, 1239 (9th Cir. 1998) (quoting 18 U.S.C. § 3626(a)(1)) (holding that Congress explicitly prescribed section 3626's reach to include pending cases).[7]

Here, Plaintiff has alleged that Defendants threatened to retaliate against him by placing him in AD-SEG if he refused to remain in the upper tier.  FAC at 3.  Plaintiff also claims that members of the prison staff have retaliated against him by regularly interrupting his mail and correspondence and by destroying his Second Amended Complaint "to frustrate his attempts to prosecute this action."  Oppo at 3.  However, Plaintiff has not alleged that there is a "real or immediate threat that [he] will be wronged again."  Lyons, 461 U.S. at 111; see Jones v. Dovery, 2008 WL 733468, at *10 (S.D. Cal. Mar. 18, 2008) (adopting the magistrate judge's report and recommendation recommending dismissal of Plaintiff's claims for injunctive relief after finding that "Plaintiff has not alleged that an irreparable injury is threatened, or provided any proof that Defendants have engaged in a persistent pattern of misconduct.").  Plaintiff is no longer housed in the upper tier [FAC at 4] so there is no immediate threat with respect to being moved to AD-SEG for failing to stay in upper tier housing, and while Plaintiff states that his mail is being tampered with, he does not provide any support for his statement or claim that he has had any problems receiving the Court's orders or Defendant's briefing in this case.  Second, Plaintiff has not alleged facts establishing a pattern, plan or policy to harass, threaten, punish or retaliate against Plaintiff in connection with his requests for relief.  Thomas v. County of Los Angeles, 978

_____

[7]The PLRA provides, in relevant part: Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.  18 U.S.C. § 3626(a)(1)(A).

10CV2362-WQH (BLM)

F.2d 504, 509 (9th Cir. 1992) ("[P]laintiff's eventual burden in obtaining a permanent injunction...is to establish more than repeated incidents of misconduct...[Plaintiff must establish] not merely misconduct, but a pervasive pattern of misconduct reflecting departmental policy."); see also Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.").

In addition, Plaintiff must establish standing for his claim for relief which includes showing that "he is under threat of suffering an injury in fact that is concrete and particularized [and that] the threat [is] actual and imminent, not conjectural or hypothetical [and] fairly traceable to challenged conduct of the defendant. Lopez v. Cate, 2013 WL 239097, *13 (E.D. Cal. Jan. 22, 2013) (citing Summers v. Earth Island Institute, 555 U.S. 488, 493 (2009) and Mayfield v. United States, 599 F.3d 964, 969 (9th Cir. 2010)).  Plaintiff has not demonstrated how his request for an injunction against retaliatory cell searches and confiscation of personal property relates to the challenged conduct of the Defendants where Plaintiff has not alleged or made any reference to having his cell searched or property confiscated in retaliation for his desire for lower tier housing or his lawsuit.  Also, the alleged wrongs - refusal to grant Plaintiff a cell with an available lower bunk and denial of medical care - have already taken place and were remedied more than three years ago.  FAC at 4 and MTD at 8. Plaintiff does not allege that he has had any problems with being house in the lower tier since he was moved there on June 23, 2009 or been threatened with being moved.  Moreover, applicable law already prohibits Defendants from retaliating against Plaintiff for exercising his First Amendment right to court access.  See Lytle v. Wondrash, 182 F.3d 1083, 1090 (9th Cir. 1999) (confirming that individuals have clearly established right to be free from retaliation for exercising First Amendment right of access to the courts).

Accordingly, the Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's request for injunctive relief be **GRANTED**.

## CONCLUSION

For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) approving and adopting this Report and Recommendation and (2)

**GRANTING** Defendants' Motion to Dismiss Plaintiff's deliberate indifference to medical care claim and request for injunctive relief for failure to state a claim.  Only Plaintiff's Eighth Amendment claim for cruel and unusual punishment against both defendants remains.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties no later than **March 29, 2013**.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **April 12, 2013**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

DATED:  March 8, 2013

BARBARA L. MAJOR
United States Magistrate Judge

10CV2362-WQH (BLM)